FILED

12/06/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0049



DA 16-0049

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 320N

IN THE MATTER OF:

N.W.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Anaconda-Deer Lodge, Cause No. DN 13-12
Honorable Ray Dayton, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Shannon Hathaway, Montana Legal Justice, PLLC, Missoula, Montana

        For Appellee:

        Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

        Ben Krakowka, Deer Lodge County Attorney, Ellen Donohoe, Deputy
County Attorney, Anaconda, Montana

Submitted on Briefs:  October 5, 2016

Decided:  December 6, 2016

Filed:

_____
Clerk

Justice Patricia Cotter delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Biological father, W.W. (Father), appeals from a December 2015 order of the Third Judicial District Court, Deer Lodge County, terminating his parental rights to N.W. We affirm.

¶3 On August 8, 2013, the Montana Department of Health and Human Services, Child and Family Services Division (CFS), received a report alleging that N.W., a newborn, was in danger of being abused and/or neglected as her biological mother, P.J. (Mother), had medical and mental health issues that were not being properly addressed. On August 14, 2013, CFS received another report regarding N.W. after an incident at the Pintler Medical Clinic in Anaconda, Montana. Clinic staff called law enforcement after Father's threatening behavior made the staff concerned for the safety of Mother and N.W. CFS subsequently removed N.W. from parental care and placed N.W. in out-of-home foster care with N.W.'s maternal grandparents. On August 19, 2013, the Department of Public Health and Human Services (Department) filed a Petition for Emergency Protective Services, Adjudication as Youth in Need of Care and Granting Temporary Custody. On September 6, 2013, the District Court adjudicated N.W. a youth in need of care, and temporary legal custody was granted to the Department.

¶4 On October 2, 2013, the District Court held a hearing and approved a Treatment Plan for Father. At a hearing in March 2014, the District Court expressed concerns that Father appeared to be "going through the motions," regarding his obligations under the Treatment Plan, and noted that it appeared Father did not believe he needed to change. Subsequently, Father stipulated to a new Treatment Plan in April 2014. This cycle would occur once more in the following year. After the same concerns were raised before the District Court at a hearing in October 2014, Father once again stipulated to a new Treatment Plan.

¶5 In March 2015, CFS filed a Petition for Termination of Parental Rights and Permanent Legal Custody with Right to Consent to Adoption. In April 2015, Mother voluntarily relinquished her parental rights to N.W. The District Court held a hearing in July 2015 to determine whether to terminate Father's parental rights. During the hearing, CFS presented extensive evidence, including testimony from Dr. Susan Day, a licensed clinical psychologist who evaluated Father on two separate occasions, Dr. Bowman Smelko, a licensed clinical psychologist who evaluated Father in January 2015, Renee Riley-Finnegan, a mental health therapist who had worked with Father from March 2014 until February 2015, and Colleen McGuire, an employee of the Anaconda Family Resource Center who supervised visits between N.W. and Father and Mother from January 2014 until February 2015. All four witnesses called by the Department expressed significant concerns regarding Father's behavior and ability to care for N.W. Also, Grace Schapansky, a CFS Child Protection Specialist, testified that Father did not successfully complete any of his three Treatment Plans. Following the conclusion of the

hearing, the District Court determined that Father's conduct and condition rendered him unfit to parent N.W. The District Court found that continuation of the parent-child legal relationship between N.W. and Father was likely to result in continued abuse and/or neglect. The District Court determined that CFS had undertaken reasonable efforts towards reunification and/or preservation of the family unit. Finally, the Court determined that it was in the best interest of N.W. to terminate the parental rights of Father and award permanent legal custody to CFS with authority to consent to N.W.'s adoption or guardianship.

¶6 "A court's decision to terminate a parent's legal rights to a child is not a decision made lightly." *In re M.N., J.N., Jr., and R.N.*, 2011 MT 245, ¶ 14, 362 Mont. 186, 261 P.3d 1047 (citation omitted). "We will presume that a district court's decision is correct and will not disturb it on appeal unless there is a mistake of law or a finding of fact not supported by substantial evidence that would amount to a clear abuse of discretion." *In re M.N., J.N., Jr., and R.N.*, ¶ 14 (citation omitted). "The right to parent is a fundamental liberty interest and an order terminating the right must be supported by clear and convincing evidence." *In re M.N., J.N., Jr., and R.N.*, ¶ 14 (citation omitted). However, the best interests of the child are of paramount concern and take precedence over parental rights. *In re M.N., J.N., Jr., and R.N.*, ¶ 14.

¶7 Father argues that the District Court violated his constitutional right to parent his child and abused its discretion when it terminated his parental rights because the State did not meet its burden of establishing that it used reasonable efforts to reunify the family or that the treatment plan given to Father was appropriate.

4

¶8 We conclude that the District Court's decision was supported by the applicable law and by ample, clear, and convincing evidence in the record. In making this determination, we note that the Department made considerable efforts attempting to reunify the family, and even if we were to determine that certain elements in Father's Treatment Plan were unwarranted, he still failed to complete the remaining and unchallenged tasks. Therefore, we conclude that the District Court did not err in terminating Father's parental rights to N.W.

¶9 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of this Court, this case presents a question controlled by settled law.

¶10 Affirmed.

/S/ PATRICIA COTTER

We Concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ MICHAEL E WHEAT